*W. Sion*

ORIGINAL

DALEY, DE BOFSKY & BRYANT

MARK D. DEBOFSKY 8311
55 W. Monroe, Suite 2440
Chicago, Illinois 60603
Telephone:  (312) 372-5200
Facsimile:   (312) 372-2778
mdebofsky@ddbchicago.com

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 16 2010

at 3 o'clock and 20 min. M.
SUE BEITIA, CLERK

KLEVANSKY PIPER VAN ETTEN LLP
A Limited Liability Law Partnership

ALAN VAN ETTEN 1279-0
1003 Bishop Street
Pauahi Tower, Suite 770
Honolulu, Hawaii 96813
Telephone: (808) 536.0200
Facsimile: (808) 536.0221
Email: ave@kpvlaw.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

CV10  00473 SOM  KSC

| | |
|---|---|
| CHRISTINE DANIEL,<br><br>  Plaintiff,<br><br> vs.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>  Defendants. | CIVIL NO. _____<br><br><br>COMPLAINT; EXHIBIT "A";<br>SUMMONS |

22812_2.doc

<u>COMPLAINT</u>

Now comes the plaintiff, CHRISTINE DANIEL, by her attorneys, MARK D. DE BOFSKY and ALAN VAN ETTEN, and complaining against the defendant, CIGNA GROUP INSURANCE, she states:

### *Jurisdiction and Venue*

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan which, in this case, consists of a group long term disability insurance Plan underwritten by the Life Insurance Company of North America and administered by CIGNA Group Insurance to benefit employees of Queen's Medical Center. In addition, this action may be brought before this court pursuant to 28 U.S.C. §1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

2.     The ERISA statute provides, at 29 U.S.C. §1133, a mechanism for administrative or internal appeal of benefit denials. Those avenues of appeal have been exhausted.

3.     Venue is proper in the District of Hawaii.   29 U.S.C. §1132(e) (2), 28 U.S.C. §1391.

### Nature of Action

4.     This is a claim seeking an award to plaintiff of disability income benefits pursuant to Queen's Medical Center's Group Long Term Disability policy ("the Plan") (A true and correct copy of the description and summary of the applicable plan are attached hereto as Exhibit "A") underwritten by the Life Insurance Company of North America and insured by CIGNA Group Insurance under group policy number LK0007576.  This claim seeks to restore Christine Daniel's monthly long-term disability benefits as well as any other employee benefits Daniel was receiving on account of the continuation of her disability benefits. This action is brought pursuant to §502(a)(1)(B) of ERISA (29 U.S.C. §1132(a)(1)(B)).   Plaintiff also seeks prejudgment interest and attorneys' fees pursuant to 29 U.S.C §1132(g) and ERISA §502(g).

### The Parties

5.     The Plaintiff, Christine Daniel ("Daniel") (Incident No. 174687) is and was a resident of Hawaii at all times relevant hereto, and the events, transactions, and occurrences relevant to Daniel's claim of disability took place within the District of Hawaii.

6.    The Defendant, Life Insurance Company of North America ("LINA"), a subsidiary of CIGNA Corporation, at all times relevant hereto, has been doing business throughout the United States and within the District of Hawaii; and providing welfare benefits, including the disability insurance benefits payable under the Plan within the District of Hawaii.

7.    At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1); and incident to her employment, Daniel received coverage under the Plan as a "participant" as defined by 29 U.S.C. §1002(7).   This claim relates to benefits under the foregoing Plan.

### *Statement of Facts*

8.    Queen's Medical Center employed Daniel, currently age 43 (DOB x/xx/1967), as a Registered Nurse (RN) until October 2, 1997, when she ceased working due to myriad medical conditions, including rheumatoid arthritis, lupus, and Sjogren's syndrome; back pain, joint pain, TMJ, fibromyalgia, muscle pain, hip pain, leg pain, collagen vascular disease; neck pain stemming from a June 1997 work incident; and numbness and tingling in her lower extremities resulting from a September 20, 1997 motor vehicle accident.   On account of her medical conditions, Daniel suffers from severe headaches, profound fatigue, dizziness, weakness, nausea, fevers, vision

difficulty, cognitive impairment, and pain throughout her body. The lability of Daniel's conditions causes unpredictable symptom flare-ups that can last days or weeks at a time and render her completely debilitated during the symptom flare-ups. Even when not experiencing flare-ups, though, Daniel's conditions impose significant functional limitations that prevent her from working; i.e., she is limited in her ability to type on a keyboard which causes her to experience excruciating pain while sitting at a desk. Due to her impairments, Daniel has been unable to perform the material duties of her occupation, or any other occupation, since October of 1997.

9.    Subsequent to ceasing her employment, Daniel made a claim for benefits under the Plan stating that due to her conditions she was entitled to disability benefits based on meeting the Plan's definition of "disabled," which states in relevant part,

An Employee will be considered Disabled if because of Injury or Sickness:

> 1. he is unable to perform all of the material duties of his or her regular occupation,
> 2. after Monthly Benefits have been payable for 24 months, he is unable to perform all of the material duties of any occupation for which she may reasonably become qualified based on education, training or experience.

(Exhibit A, pg. 7).

10.     Upon receipt of her application, LINA awarded Daniel long term disability ("LTD") benefits at a rate equal to 66 2/3% of her salary (less Social Security disability benefits), or $2,066 per month, which were paid without interruption from March 31, 1998 until September 30, 2009 when benefits were abruptly terminated despite no material change or improvement in her medical condition.

11.     In addition to LINA benefits, Daniel also concurrently applied for and received Social Security disability benefits.  Significantly, the Social Security Administration concluded that Daniel had become disabled and unable to engage in any substantial gainful activity since October 2, 1997. (See: 42 U.S.C. §423(d)(1)(A) – definition of "disabled" in Social Security Act).   Daniel continues to receive Social Security disability benefits and CIGNA benefited from the Social Security award by reducing the benefits it was obligated to pay by the amount of monthly Social Security disability benefits Daniel received.

12.     Despite the fact that the severe limitations imposed by Daniel's medical conditions have not remitted or improved, LINA notified her in a September 30, 2009 letter that, effective that date, she no longer met the definition of "disabled" under the Plan.  Selectively citing functional capacity evaluation ("FCE") results and heavily-edited surveillance footage, LINA

inaccurately portrayed Daniel's sustained physical abilities and limitations by asserting that she had full-time "sedentary" work capacity. LINA also predicated its determination on the consulting opinion of a physician, Clayton Cowl, M.D., who merely reviewed Daniel's file without examining her.

13.   Daniel appealed LINA's termination of her LTD benefits through her attorney on March 12, 2010. In support of her appeal, Daniel presented additional objective medical evidence from her two treating physicians documenting the liability of her symptoms and emphasizing that LINA failed to consider the debilitating severity of her arthritis when it flares, and that the unpredictability of the symptom flares would preclude her from engaging in competitive employment. The inherent variability and volatility of Daniel's symptoms, corroborated by her two treating physicians, preclude LINA's reliance on the FCE and surveillance evidence.

14.   Despite Daniel's due process rights and statutory right to a full and fair review pursuant to 29 U.S.C. § 1133, LINA failed to perform a full and fair review of her claim as required by statute, and neglected to consider and properly weigh all the evidence, which led to a final denial on May 7, 2010. LINA again justified its decision by citing FCE results, surveillance footage, and the report of a non-examining doctor which denied Plaintiff her right to a full a fair review, her right to due process of law, and

7

represented conduct which was in breach of the fiduciary obligations imposed on LINA by ERISA.

15.    All avenues of pre-suit appeal seeking reinstatement of benefits have now been exhausted.

16.    LINA's determination is contrary to the terms of the Policy and has no rational support in the evidence.  The decision further contravenes the reports and assessments of Daniel's treating physicians, as well as witness statements corroborating the medical evidence.

17.    Daniel's condition has consistently met and continues to meet the Plan's definition of "disabled."  LINA's termination of her LTD benefits without evidence of material improvement was devoid of legitimate basis and made without a full and fair review of the full evidence. Therefore, Daniel is entitled to all benefits due since September 30, 2009. Such benefits must continue pursuant to the terms of the policy until Daniel recovers from disability, dies, or reaches the age of 65, whichever comes first.

### *Relief Sought*

WHEREFORE, plaintiff prays for the following relief:

A.    That the court grant plaintiff plenary consideration of her claim in accordance with her statutory and due process rights and enter

judgment in plaintiff's favor and against the defendant and that the court order the defendant to pay disability income benefits to Daniel in an amount equal to the contractual amount of benefits to which she is entitled; that is, $2,066/month   (66.66% of her monthly salary less social security benefits) since October 2009 onward.

        B.     That the court order the Plan to pay plaintiff prejudgment interest at a rate of 15% per annum pursuant to H.R.S. §431:13-108 on all benefits that have accrued prior to the date of judgment;

        C.     That the court order reinstatement of any additional employee benefits plaintiff was receiving on account of receipt of disability insurance benefits;

        D.     That the court order the Defendant to continue paying plaintiff benefits so long as she meets the policy's terms and conditions for receipt of benefits;

        E.     That the court award plaintiff attorney's fees pursuant to 29 U.S.C. §1132(g); and

        F.     That plaintiff recover any and all other penalties, damages, and relief to which she may be entitled, as well as the costs of suit.

DATED: _August 16, 2010_

KLEVANSKY PIPER VAN ETTEN LLP

By: _____
ALAN VAN ETTEN

- and –

DALEY, DE BOFSKY & BRYANT
MARK D. DEBOFSKY

Attorneys for Plaintiff

22812_2.doc